## TRAVELERS INSURANCE CO. v. MINTON.

No. 27592.   Oct. 26, 1937.

Rehearing Denied Nov. 23, 1937.

McKeever, Stewart & McKeever, for plaintiff in error.

W. E. Crowe, for defendant in error.

GIBSON, J.   The defendant in error. Muriel L. Minton, is the widow and beneficiary of Roy F. Minton, who held an accident insurance policy issued by the plaintiff in error, Travelers Insurance Company. Minton died of a wound resulting from the alleged accidental discharge of a gun in his own hands.   In an action on the policy instituted by the beneficiary in the district court of Garfield county, the issue raised by the pleadings was suicide, which, if true, would avoid the policy.   Verdict and judgment were for plaintiff below, and defendant appealed.   The parties are herein referred to as they appeared at the trial.

The assignments question the propriety of receiving in evidence as a part of the res gestae certain statements made to witnesses by the insured after his injury.

There is evidence in the nature of certain unexplained discrepancies in Minton's accounts at the bank where he was employed tending toward proof of a motive for taking his own life.   During business hours the next day after bank examiners appear to have discovered the aforesaid discrepancies, Minton drove his automobile into the country, where shortly before noon he visited the home of a brother, Howard Minton, where he transacted some minor business as administrator of his father's estate.   Thence he proceeded to the home of another brother, Lester Minton, some two miles distant, where he borrowed a shotgun, visited a few minutes and departed.   Shortly thereafter he was found by his young nephew, Bruce Minton, near Howard's home lying in the road beside his car, a gunshot wound in his abdomen. The gun, an automatic, was lying on the floor of the car, the barrel protruding six or eight inches through the open door.   An empty shell was "jammed" in the chamber.

The testimony of witnesses present at the Lester Minton home shows that the insured borrowed the gun for the stated purpose of killing some wild geese seen flying about the fields that morning.   He wanted to "beat the boys and get the first goose of the season."   He was told the gun was in bad repair.   It would not properly extract shells

and reload the chamber.   Insured was in a jovial mood while visiting the homes of his brothers.   There was nothing unusual in his behavior or appearance.   He said he was out on business for the bank and was in a hurry.

The statements attributed to the insured and objected to by defendant as self-serving, hearsay, and not a part of the res gestae were brought out in the testimony of Corine Minton and Dr. Harris.

Corine Minton, wife of Howard Minton, arrived at the scene of the accident about 15 minutes after it occurred.   After relating the condition in which she found the deceased, she testified in answer to counsel's question, as follows: "I said, 'Roy, how did this happen'?   and he said, 'Oh, those geese —I was going to get those geese and I guess the gun caught.'"

Dr. Harris arrived at the scene not many minutes later.   The insured had just been placed in an ambulance.   The witness entered the ambulance and talked to the insured, who was at that time conscious.   After relating from the stand the critical condition in which he found Minton, the doctor testified as follows:

"He said there was some geese down— he saw flying over to the pond there, and he stopped—there was a pond right over the hill, and he said he was going to get out and try to kill them."

The evidence shows that the injuries were extremely severe.   The insured was in a helpless physical condition at all times thereafter and apparently suffered intense pain.   He died in a hospital at 5 o'clock that afternoon.

Defendant says that the foregoing evidence of accidental injury was not a part of the res gestae and therefore erroneously received by the trial court.

The question is, Were these statements of the injured party such that under all the surrounding circumstances they may be said to constitute a part of the accident itself?

Res gestae consists of all the things done in relation to, and as a part of, a certain event.   A statement is a portion of the event, dependent entirely upon whether it was provoked spontaneously by the event itself.   If subsequently narrated, without the characteristic of spontaneity, and calculated merely to inform, such statement is not a part of the res gestae.   See Standard

308

Accident Ins. Co. v. Baker, 145 Okla. 100, 291 P. 962. In speaking of res gestae, the court in that case said:

"* * * It consists of those statements made rather by the event than about the event, those expressions which grow out of and characterize the event and not a narration of a past event or comment upon it. There is no 'rule of thumb' by which such evidence is determined. Each event is governed by its own facts and circumstances. Were the statements spontaneous and instinctive, or were they premeditated and the result of the wariness of the speaker endeavoring to color the situation? The statements so admitted should be contemporaneous with the event, but time is not necessarily a controlling element or principle; it is not necessary that they be coincident in point of time.

"'If they sprang out of the principal fact, tend to explain it, were voluntary and spontaneous, and made at a time so near it as to preclude the idea of deliberate design, they may be regarded as contemporaneous and are admissible in evidence'. 10 R. C. L. 978."

There the court also held, following other decisions of this court, as follows:

"The question of the admissibility of statements as part of the res gestae is largely determined by the facts and circumstances of each case and should, in a great measure, be left to the determination of the trial court."

In the Baker Case this court approved the action of the trial court in admitting statements made by the injured person to other parties some 25 or 30 minutes after he was found in a critical condition from the effects of a beating alleged to have been administered by hijackers. Relative to those statements, the court said:

"In the instant case deceased was located in physical distress, he was breathing with difficulty, he said, 'I have been hijacked.' He was helped into the depot. The conductor there heard him say, 'The hijackers got me.' The special agent of the railroad and the sheriff were called. The deputy sheriff was at the jail some quarter of a mile from the station. He hastened to put his clothes on and rushed to the depot in his car. Assured stated after he arrived how the hijackers had knocked and kicked him about and caused him to fall in the borrow pit nearby. The special agent testified he arrived within about twenty-five minutes after he was called and that he heard similar statements made. Assured continued to grow weaker after he was found and died within a short while. There seems to have been no time in which deceased was free from the oppression and excitement of the event of the hijacking. Physical facts supported his statements. * * *"

The circumstances concerning the condition of the injured party there are very similar to those of the insured in the instant case. Here the insured was in great physical distress when he made the statements. He was helpless, and, as events proved, mortally wounded. One of his statements was made 15 minutes after he was first found, but immediately upon the arrival of the party to whom it was made; the other within 25 or 30 minutes, also immediately upon the arrival of the person to whom it was made. There is no evidence that his wound was considered other than mortal from the start. He suffered greatly from shock and pain. There was no time in which he was free from the "oppression and excitement" of the shooting. Physical facts supported the theory of accidental discharge of the gun. It was in bad repair. His answers made to questions asked spontaneously in the excitement of the moment were apparently as spontaneous as the questions themselves, and were uttered without design, so far as we can know, to mislead the witnesses or to create a false impression concerning the cause of the accident. We are unable to say that the court erred in considering these statements, not as mere narrations of a past event, but as spontaneous and truthful assertions made on the spur of the moment by reason of the present stress and excitement, thus linking them with the main event of the injury as a part thereof.

We consider the decision in Standard Accident Ins. Co. v. Baker, supra, as controlling here, and, for that reason, deem it unnecessary to discuss the cases from other jurisdictions cited by the defendant.

The testimony complained of was properly received by the court, and there being evidence sufficiently indicative of accidental death to warrant submission to the jury, the judgment should be, and is, affirmed.

OSBORN, C. J., and RILEY, CORN, and DAVISON, JJ., concur.